**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| **KEVIN WILSON,** | * |
| | * |
| **Plaintiff** | * |
| | * |
| **v.** | * |
| | *   **Civil No.: PJM 08-cv-02359** |
| **PRINCE GEORGE'S COUNTY** | * |
| **BOARD OF EDUCATION,** | * |
| | * |
| **Defendant** | * |

**<u>MEMORANDUM OPINION</u>**

Pro se Plaintiff Kevin Wilson, a self-described former "para-professional" in the Prince George's County Public School System, has brought suit alleging that his former employer, the Prince George's Board of Education ("Board"), created a hostile work environment after it failed to act upon his claims of sexual harassment by a student, which he asserts would violate Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* 42 U.S.C. § 2000e-2(a)(1).  In addition, Wilson claims that after he complained about the alleged harassment, the Board terminated his employment in retaliation for his participation in a protected activity under Title VII.  *See* 42 U.S.C. § 2000e-3(a).  The Board has filed a Motion for Summary Judgment which Wilson opposes.

For the reasons that follow, the Motion for Summary Judgment [Document No. 53] will be **GRANTED**.

**I.**

In support of his Title VII claim, Wilson asserts that he was subjected to harassment from October 6 through mid-November 2006 by a **ten-year-old female student** at Woodmore Elementary School. Examples of the alleged incidents of "harassment" include, *inter alia*: that the student in question "bumped into him three times without saying excuse me," that the student's "forearm touched his buttocks one time," and that the student verbally harassed him when one of the student's peers allegedly told Wilson that "[the student] said [to say] hello."

Wilson says he contacted the school's administration regarding the alleged harassment and, in a meeting with the school's principal and the student's mother, a decision was made to transfer the student to another class.  After the student had been transferred, Wilson contacted his supervisor by e-mail to request that the student sign a "contract," essentially asking that she consent to a restraining order that she would not come near him. Wilson concedes that he asked for the "contract" after the student had been moved to another class, and the alleged harassment had ceased. *See* Dep. of Kevin Wilson, pp. 304:16 – 305:8.  Although it is not entirely clear, it appears that in early December 2006 Wilson made as many as three demands to the principal that the student sign the contract, none of which the principal acceded to.

When the Board refused to acquiesce to the request, Wilson contacted the student's parent directly.  (Second Am. Compl. at 3.)  Apparently dissatisfied with the outcome, Wilson refused to execute part of his employment duties, informing his superior to this effect by e-mail on December 4, 2006.  *See* Dep. of Kevin Wilson, 344:17-348:21; Second Am. Compl. at 3.  On December 6, 2006 the school principal purportedly "accused [Wilson] of insubordination." Compl. at 2. Wilson admits that he refused to discharge his regular supervisorial duties of an autistic student during the school lunch hour after his supervisor refused to accede to his request

for a "contract" between him and the alleged student harasser. *See* Dep. of Kevin Wilson, 344:16 – 348:19. On December 12, 2006 Wilson received a verbal notice of termination.  Compl. at 2.

Thereafter Wilson filed a complaint with the Prince George's Human Relations Commission, alleging that his termination was retaliatory.  The Commission, however, found no merit in Wilson's allegations and dismissed his complaint. Wilson had concurrently filed a complaint with the EEOC which, after a separate investigation also dismissed the claim. When he received a right to sue letter from the EEOC, Wilson filed suit in this Court.

The Board filed its Motion for Summary Judgment on May 10, 2010.  Wilson's response was first due by May 27, 2010.  Since that time, Wilson has filed numerous motions seeking an extension of time to respond.  Although the Court has granted several of Wilson's motions, he has yet to file a response and the Court is now prepared to rule on the Board's Motion without further delay.

## II.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genius issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Cleotex v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is properly granted against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Cleotex*, 477 U.S. at 322-23.  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Id*. at 323.  Once the moving party meets this burden, the

non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is obligated to view the facts and inferences drawn from the facts in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Matsushita,* 475 U.S. at 587-88. The non-moving party may not rest upon its mere allegations, however, but must "set out specific facts showing genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Cleotex Corp.*, 736 F.2d 958-59 (4th Cir. 1984) (citation omitted). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.

Wilson claims that a ten-year old student sexually harassed him at his place of employment. Since he does not directly attribute the harassing actions to his supervisor or employer, the Court assumes that his claim is based on the theory that the student's alleged harassment created a "hostile work environment" in derogation of Title VII.

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C. § 2000e-2(a)(1). Since the workplace environment is one of the "terms, conditions, or privileges of employment," Title VII creates a cause of action in favor of persons forced to work in a hostile workplace. *Hartsell v. Duplex Prodcuts, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997)

(citation omitted); *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 331 (4th Cir. 2003); *see also Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 66 (1986) (determining "that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.").

To establish a hostile work environment claim, a plaintiff must prove: "(1) that he was harassed 'because of' his 'sex;' (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." *Hartsell*, 123 F.3d at 772 (quoting *Wrightson v. Pizza Hut of America, Inc*., 99 F.3d 138, 142 (4th Cir. 1996)).  In this case, it is evident that there was no sexual harassment and there was no hostile work environment as contemplated under Title VII.

As to the alleged harassment, there is nothing to suggest that Wilson was harassed because of his gender or that what he alleges ever had a sexual component. Bumping or a touching on the buttocks of a grown male by a ten-year-old girl is far more likely the attention-getting action of a young child than a sexual overture. The Complaint does not allege that the student targeted Wilson with harassing comments much less comments related to his gender. In short, the final requirement for a hostile work environment clearly has not been met.

Nor does Wilson provide evidence that the alleged actions by the student were sufficiently severe or pervasive to create a hostile work environment. Even if there were sexual harassment in this case—and the Court finds there was none –nothing like a hostile work environment was created. In this regard, the Court looks at: (i) the frequency of the discriminatory conduct; (ii) its severity; (iii) whether it is physically threatening or humiliating, or a mere offensive utterance; (iv) whether it unreasonably interferes with an employee's work

performance; and (v) whether it resulted in psychological harm. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993). In evaluating this claim, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted).

Once again, Wilson alleges nothing more than typical immature behavior associated with a child of ten years. Even as between adults, the United States Supreme Court has made a distinction between childish antics and actionable Title VII sexual harassment claims, noting that "Title VII does not prohibit 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex,'" and "that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (citations omitted). This is true *a fortiori* when the female is a ten-year-old child and the male is an adult.

Wilson offers no evidence of serious physical touching, lewd references or offensive references based on his gender, or physical intimidation, psychological harassment, or other activities typically present in hostile workplace cases. *See, e.g., Meritor Savs. Bank*, 477 U.S. 60-62 (listing a litany of such alleged activities in a case for a Title VII hostile workplace claim, such as requests for sexual favors, unwanted fondling and touching, and suggestive sexual remarks made to claimant by her superior.). While Wilson may subjectively consider these innocuous actions to be harassment and to be "severe" enough to justify a hostile workplace claim under Title VII, the test is whether a reasonable person would have found the environment hostile or abusive. The Court finds as a matter of law that a reasonable person would not.

Wilson's claim of sexual harassment also fails to establish the degree of frequency (i.e. "pervasive" conduct) required by *Harris*. After he notified his supervisor of the alleged harassment, the school immediately re-assigned the student to another class.  *See* Dep. of Kevin Wilson, pp. 225:12-226:14.  After the student was moved, there is no suggestion that the student continued to have any contact with him. *See id*., pp. 288:13 – 289:4; 253:8 – 254:14.

Finally, the alleged harassment did not reasonably interfere with Wilson's performance of his employment responsibilities.  It was he who refused to execute a portion of his responsibilities after the student had been transferred and after the alleged harassment had ceased.  The duties that he refused to execute had no relation whatsoever to the harassment claim.

Apart from all this, a Title VII claimant must prove that the harassment "was imputable on some basis to her employer." *Ocheltree,* 335 F.3d at 333-34, as "Title VII . . . places significant responsibilities on employers in reasonably responding to employee allegations." *Howard v. Winter*, 446 F.3d 559, 571 (4th Cir. 2006).  Wilson claims that a student, rather than his supervisor or co-worker, harassed him. But even if the alleged harasser had been an adult or supervisor, the standard for imputing employer liability remains negligence. "In a case where an employee is sexually harassed by a coworker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it. *Spicer v. Virginia Dep't of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995) (en banc)); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) (noting that "[n]egligence sets a minimum standard for employer liability under Title VII").

The Court accepts that Wilson complained of the student's behavior to his principal. That is not enough.  "When presented with the existence of illegal conduct, employers can be required to respond promptly and effectively, but when an employer's remedial response results in the *cessation* of the complained of conduct, liability must cease as well." *Howard*, 446 F.3d at 567 (quoting *Spicer*, 66 F.3d at 711 (en banc)) (emphasis added).   "What is most important," according to the Fourth Circuit is that, after the allegedly harassed employee makes a complaint to their supervisor, "there [are] no further instances of harassment." *Howard*, 446 F.3d at 571; *see also Mikels v. City of Durham*, 183 F.3d 323, 329-30 (4th Cir. 1999) (noting that in workplace sexual harassment cases "[the Fourth Circuit has] given great weight to the fact that a particular [employer] response was demonstrably adequate to cause cessation of the conduct in question."); *Swentek v. USAIR, Inc*., 830 F.2d 552, 558 (4th Cir. 1987)  (same).

Once Wilson complained of sexual harassment—even without a full investigation of his claims - the Board promptly moved the student in question to another class.  *See* Dep. of Kevin Wilson, pp. 225:12-226:14.  As a result, the student did not come into contact with Wilson again. *See id.*, pp. 288:13 – 289:4; 253:8 – 254:14.

There is no basis for employer liability for the underlying claim in this case.

## IV.

Wilson's claim of retaliation for his alleged participation in protected conduct under Title VII fares no better.  Title VII makes it an "unlawful employment practice for an employer to discriminate [i.e. retaliate] against any . . . employee[ ] . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter."  42 U.S.C. § 2000e-3(a).   To establish a *prima facie* employer retaliation case under Title VII, a plaintiff must show that: "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against [him]; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997) (citation omitted); *see also Rhoades v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001).   Retaliation may be proved based on either direct evidence or the burden-shifting scheme of the United States Supreme Court's *McDonnell-Douglas* test. *Peters v. Jenney*, 327 F.3d 307, 320 n.15 (4th Cir. 2003).  The framework is as follows:

> First, the plaintiff must establish a *prima facie* case of retaliation. The burden then shifts to the employer to produce a legitimate nondiscriminatory reason for the adverse action. The plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation by showing both that the reason was false and that discrimination was the real reason for the challenged conduct.

*Smith v. First Union Nat. Bank*, 202 F.3d 234, 248 (4th Cir. 2000), *accord Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616-17 (D. Md. 2009) (citations omitted).

It is true that a claim for retaliation may proceed even if the underlying claim of employment discrimination is not established.  *Balazs v. Liebenthal*, 32 F.3d 151,158 (4th Cir. 1994).  But there is an important caveat to that proposition: The underlying claim of retaliation must at least have been plausible.  *See Peters*, 327 F.3d at 321 (noting that the plaintiff's claim of retaliation must be "*objectively* reasonable in light of the facts . . . .")  (citation omitted) (emphasis in original).  A simple wink or a smile to a hypersensitive individual may cause that person to believe that he has been sexually harassed and that person may complain about it to a supervisor.  But that wink or smile is so far removed from anything arguably sexual or harassing in nature as to be outside the realm of protected activity under Title VII.  That essentially is what exists as a matter of law in the case at hand: The childish behavior of a young student toward an

adult which in no way approaches sexual conduct much less does it plausibly constitute harassing conduct or conduct giving rise to a hostile work environment.  As a result there is no need to consider whether there was alleged retaliation in this case; quite simply, there was no protected activity to retaliate against.

That said, just to close the loop, the Court will assume *arguendo* that Wilson has made out a *prima facie* case of retaliation – that he complained of sexual harassment by the student and that he was terminated as a consequence.

However, with the establishment of a *prima facie* case, the burden shifts to the defendant to provide a nondiscriminatory reason for terminating plaintiff's employment. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001) ("Once [a plaintiff] establishes the elements of his *prima facie* case, the burden shifts to [the employer] to proffer evidence of a legitimate, non-discriminatory reason for taking the adverse employment action.")  Here, the Board has clearly shown that Wilson was insubordinate.   Wilson himself admits to insubordination since he willfully refused to exercise his normal employment responsibilities after the principal refused to acquiesce in his continued insistence that the young student consent to in effect a cease and desist order. *See* Dep. of Kevin Wilson pp. 344:17-348:18.  This was a wholly unnecessary and unreasonable demand – and it certainly in no way can be linked to a refusal to otherwise perform one's job duties.

Under the third prong of *McDonnell Douglas*, in order for a plaintiff to prevail he must rebut the employer's proffered non-pretextual reason for termination of employment. *See First Union Nat. Bank*, 202 F.3d at 248. (stating that for the final step of the *McDonnell Douglas* test "[t]he plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation by showing 'both that the reason was false and that discrimination was the real reason for the

challenged conduct.'") (citation omitted).  The Board's proffered reason for terminating Wilson's employment – Wilson's freely-admitted insubordination – is why he was terminated.  Wilson has not –indeed, he cannot – show that the Board's reason for his dismissal was pretextual and that it was actually a cover for illegal retaliation. Wilson's retaliation claim is also without merit.


## V.

For the foregoing reasons, Defendants' Motion for Summary Judgment [Document No. 53] is **GRANTED;** Defendant's Motion to Dismiss for Lack of Prosecution [Document No. 67] is **MOOT;** and the Amended Complaint in this matter is **DISMISSED**.

A separate Order will **ISSUE**.


_____
                    /s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**November 29, 2010**